***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at and following the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. On January 16, 2006, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer. The Hartford is the workers' compensation insurance carrier on the risk.
3. On January 16, 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
4. Plaintiff has received temporary total disability compensation at the rate of $420.00 per week since on or about January 19, 2006.
5. The following depositions were taken and received into the record before the Deputy Commissioner:
 a. Dr. Culley Carson
 b. Dr. Brian Bennett
 c. Dr. T. Craig Derian
 d. Dr. Ronald Intini
 *********** EXHIBITS
The following exhibits were admitted into evidence:
1. Stipulated Exhibit 1: Pre-Trial Agreement
2. Stipulated Exhibit 2: Industrial Commission Forms, Motions and Orders, and Medical Records *Page 3 
3. Stipulated Exhibit 3: Defendants' Discovery Responses, Plaintiff's Discovery Responses, Form 22, and Accident Report
4. Stipulated Exhibit 4: Revised Form 22 and Per Diem Records
 *********** MOTION TO RECEIVE ADDITIONAL EVIDENCE
Plaintiff's Motion to Receive Additional Evidence is hereby GRANTED. The record of evidence is accordingly amended to include the June 29, 2009, Clinic Notes of William Blau, MD, as pages 186-88 of the exhibits in this matter.
 *********** ISSUES
1. Whether plaintiff is entitled to have defendants pay for lumbar spine surgery as a treatment for his admittedly compensable groin condition.
2. If plaintiff is not entitled to lumbar spine surgery as a treatment for his groin condition, whether plaintiff nonetheless suffered a compensable injury to his back as a result of his accident at work on January 16, 2006.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 44 year old high school graduate. *Page 4 
2. In 2004, plaintiff began working for defendant-employer as a furniture mover/installer. Plaintiff had been employed by defendant-employer on a prior occasion in a different position.
3. As a furniture mover/installer, plaintiff and his co-workers loaded trucks with furniture and delivered the furniture to defendant-employer's customers. Plaintiff was also responsible for installing furniture.
4. On January 16, 2006, plaintiff was working at North Carolina State University. He and four temporary workers were attempting to move a steel welding table that weighed approximately 1000 pounds. To move the table, plaintiff and the other workers attempted to tilt the table sideways and onto a dolly. As they were tilting the table, the other workers let go of it. Plaintiff continued to hold the table in an effort to prevent it from slamming into the floor. The strain of this incident caused the immediate onset of sharp pain in plaintiff's groin.
5. Plaintiff immediately reported his injury to defendant-employer. Thereafter, plaintiff received treatment from his family physician, Dr. Intini. Dr. Intini referred plaintiff to a urologist, Dr. Brian Bennett.
6. Dr. Bennett diagnosed plaintiff as having bilateral testicular varicoceles. Initially, Dr. Bennett treated plaintiff conservatively. However, when conservative treatment failed, Dr. Bennett performed bilateral testicular varicocele repair surgery on May 8, 2006. The surgery did not improve plaintiff's symptoms. Rather, he then developed testicular hydroceles, which required Dr. Bennett to drain excess fluid from plaintiff's testicles. When removal of the fluid did not alleviate plaintiff's pain, Dr. Bennett referred plaintiff to Dr. Culley Carson, the Chief of Urology at UNC Hospitals. *Page 5 
7. Dr. Carson saw plaintiff in January 2007. Plaintiff complained of persistent testicular pain mostly on the left side. Plaintiff did not mention any complaints of back pain. Dr. Carson testified that plaintiff suffered from three testicular conditions: hydrocele, epididymal cysts, and testicular microlithiasis.
8. Plaintiff returned to Dr. Bennett for treatment on February 22, 2007. At this appointment, Dr. Bennett noticed that plaintiff had trouble bending over and also had trouble getting up on an examining table. In his medical note, Dr. Bennett documented the history provided by plaintiff as follows: "Now complains of back pain for two weeks. Unable to sleep. Unable to lie down. Complaint of numbness in the right leg, some weakness" (emphasis added).
9. February 22, 2007 was the first time that plaintiff ever complained of back pain or numbness or leg pain to Dr. Bennett or any other doctor, including Dr. Initini, Urgent Care, and Dr. Carson. Dr. Bennett first saw plaintiff on January 21, 2006 and had been treating plaintiff periodically for over a year before plaintiff's first complaint of back pain. At the time of plaintiff's first appointment with Dr. Bennett in January 2006, plaintiff completed an intake form on which he was specifically asked if he had back pain, and plaintiff responded by writing "N/A".
10. Due to plaintiff's back pain on February 22, 2007, Dr. Bennett ordered a lumbar spine MRI that showed a herniated disc at L5-S1. After reviewing the MRI report, Dr. Bennett recommended that plaintiff be evaluated by a spine specialist.
11. By Order filed November 15, 2007, Special Deputy Commissioner Maddox ordered defendants to authorize a lumbar MRI and an evaluation by one of the following spine specialists: Dr. Leonard Nelson, Dr. William Lestini, Dr. T. Craig Derian or Dr. Dennis Bullard. *Page 6 
Defendants appealed the November 15, 2007 Order. Therefore, plaintiff sought an evaluation from Dr. Derian on his own.
12. On January 31, 2008, plaintiff presented to Dr. Derian for review of his lumbar spine MRI and evaluation of his lumbar condition. Dr. Derian reviewed the MRI and performed a physical examination. Based upon his examination, Dr. Derian recommended that plaintiff undergo lumbar decompression surgery. Plaintiff wants to undergo the surgery recommended by Dr. Derian.
13. The lumbar MRI ordered by Dr. Bennett and the evaluation performed by Dr. Derian were diagnostic measures reasonably necessary to effect a cure of plaintiff's compensable groin condition because the medical experts agree that a back injury is a potential cause of groin pain. Plaintiff sought the Industrial Commission's approval of the MRI and the evaluation by Dr. Derian within a reasonable time.
14. With regard to the cause of plaintiff's groin condition, Dr. Carson testified that L5-S1 is not an area of the spine usually associated with pain in the groin. Dr. Carson opined to a reasonable degree of medical certainty that plaintiff's pain was most likely related to his scrotum and testicles, and not his back. Specially, Dr. Carson opined that plaintiff's epididymal cysts are causing pain in his groin.
15. Dr. Carson further testified that back surgery is a very invasive procedure, and that before considering such a procedure, he would first do an anesthetic block of plaintiff's spermatic cord to see if his pain improves. If the block improves plaintiff's pain, then the pain is probably in plaintiff's testicle and not his back. Dr. Carson recommended that plaintiff's future evaluation and treatment be coordinated by both an urologist and a spine specialist to "try to eliminate different causes and — and, you know, treat the pain as a — as a team. I think that's the *Page 7 
only way it's going to work." Dr. Carson is willing to serve as the urologist in such a coordinated effort.
16. Like Dr. Carson, Dr. Bennett was unable to relate plaintiff's groin pain to his back condition. When asked if plaintiff's groin pain is related to a problem in plaintiff's lumbar spine, Dr. Bennett responded, "I don't believe that I can say that, you know, right now." However, Dr. Bennett testified that there is "a possibility that it could be related."
17. Dr. Derian testified that, assuming plaintiff did not suffer back pain for over a year after his accident at work, "I actually do not believe that [plaintiff's] back problems are the sole origin of groin symptoms in the absence of back, posterior buttock and thigh symptoms. It usually occurs all at the same time."
18. On June 29, 2009, plaintiff saw Dr. William Blau for a spermatic cord block. Although the spermatic cord block did not alleviate plaintiff's pain, Dr. Blau was unable to determine whether that was because plaintiff's pain was related to his back "in someway," or instead because the spermatic cord block might have been incomplete. Dr. Blau indicated that further testing was possible, after consultation with plaintiff's other doctors.
19. The greater weight of the evidence presently before the Commission fails to establish that plaintiff's groin pain is being caused by a condition in his back. However, the Full Commission finds that plaintiff would benefit from further evaluations by a urologist and a spine specialist to attempt to rule out all potential causes of plaintiff's pain, including any possible contribution by a back condition.
20. Even if plaintiff's herniated disc at L5-S1 is not the cause of his groin pain, plaintiff alleges that his herniated disc is nonetheless compensable because the condition was caused by his accident at work on January 16, 2006. With regard to this issue, Dr. Derian *Page 8 
opined that there is a causal relation, assuming that plaintiff suffered from back or leg pain in the year following his accident at work. However, if plaintiff "really didn't have back and leg symptoms . . . [and] mainly just had groin pain" during the year following his accident at work, then Dr. Derian testified that his opinion would change, and that he would "not really [be] sure they're related."
21. Based upon the greater weight of the evidence, including consideration of plaintiff's testimony at the hearing, the Full Commission finds that plaintiff did not begin suffering from back and leg symptoms until approximately two weeks prior to February 22, 2007, as plaintiff reported to Dr. Bennett and consistent with all of plaintiff's medical records.
22. Based upon the finding that plaintiff did not begin suffering from back and leg symptoms until approximately February 2007, the testimony of Dr. Derian fails to establish that plaintiff's back condition is causally related to his accident at work on January 16, 2006.
23. The potential issue of whether plaintiff is presently disabled from work due to his compensable injury is not before the Industrial Commission at this time.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence presently before the Commission fails to establish a causal relationship between plaintiff's groin pain and his herniated lumbar disc condition. Therefore plaintiff is not entitled to have defendants pay for lumbar spine surgery as a treatment for his admittedly compensable groin condition at the present time. N.C. Gen. Stat. § 97-25. *Page 9 
2. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his admittedly compensable groin condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including additional evaluations by Dr. Carson, and a spine specialist recommended by Dr. Carson, in a coordinated effort to rule out potential causes of plaintiff's groin pain, including any possible contribution by a back condition. Additionally, plaintiff is entitled to payment of the lumbar MRI ordered by Dr. Bennett and the evaluation performed by Dr. Derian. N.C. Gen. Stat. § 97-25.
3. The greater weight of the competent evidence of record fails to establish a causal relationship between plaintiff's injury by accident of January 16, 2006 and his herniated lumbar disc condition. Therefore, plaintiff's back condition is not compensable as a separate injury unrelated to his groin condition. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim to have defendants pay for lumbar spine surgery as a treatment for his admittedly compensable groin condition is DENIED at this time.
2. Plaintiff's claim to establish the compensability of his back condition as a separate injury unrelated to his groin condition is DENIED.
3. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's admittedly compensable groin condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including additional evaluations by Dr. Carson, and a spine specialist recommended by Dr. Carson, in a coordinated effort to rule out *Page 10 
potential causes of plaintiff's groin pain, including any possible contribution by a back condition. Additionally, defendants shall pay for the lumbar MRI ordered by Dr. Bennett and the evaluation performed by Dr. Derian.
4. Since this case is one of admitted liability prior to the involvement of Plaintiff's attorney, counsel for Plaintiff shall hereafter provide documentation for his services rendered so that attorneys' fees can thereafter be set.
5. Each side shall bear its own costs.
This the 12th day of August, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1